IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MARVIN THOMPSON | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | NO. 3-08-CV-1134-G |
| | § | |
| MICHAEL J. ASTRUE, | § | |
| Commissioner of Social Security | § | |
| | § | |
| Defendant. | § | |

**FINDINGS AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE**

Plaintiff Marvin Thompson seeks judicial review of a final adverse decision of the Commissioner of Social Security pursuant to 42 U.S.C. § 405(g). For the reasons stated herein, the hearing decision should be affirmed.

I.

Plaintiff alleges that he is disabled due to a variety of ailments, including sarcoidosis, lung disease, and arthritis. After his application for disability benefits was denied initially and on reconsideration, plaintiff requested a hearing before an administrative law judge. That hearing was held on April 11, 2007. At the time of the hearing, plaintiff was 45 years old. He has a high school education and past work experience as a sliter/sheeter operator, an order puller, a glue spreader operator, and a shipping and receiving clerk. Plaintiff has not engaged in substantial gainful activity since December 13, 2004.

The ALJ found that plaintiff was not disabled and therefore not entitled to disability benefits. Although the medical evidence established that plaintiff suffered from vascular necrosis of the hip, reduced pulmonary function, and diffuse arthralgia, the judge concluded that the severity of those

impairments did not meet or equal any impairment listed in the social security regulations. The ALJ further determined that plaintiff had the residual functional capacity to perform a limited range of sedentary work, but could not return to his past relevant employment. Relying on the testimony of a vocational expert, the judge found that plaintiff was capable of working as a charge account clerk, an escort vehicle driver, and an optical assembler -- jobs that exist in significant numbers in the national economy. Plaintiff appealed that decision to the Appeals Council. The Council affirmed. Plaintiff then filed this action in federal district court.

II.

Plaintiff contends that the hearing decision is not supported by substantial evidence and results from reversible legal error. More particularly, plaintiff argues that: (1) the ALJ improperly evaluated his credibility; (2) the ALJ did not give controlling weight to the opinion of his treating physician; (3) the ALJ relied on faulty vocational expert testimony; and (4) the Commissioner failed to establish that other available jobs exist in significant numbers. The court will address each issue in turn.

A.

Judicial review in social security cases is limited to determining whether the Commissioner's decision is supported by substantial evidence and whether the proper legal standards were used to evaluate the evidence. *See* 42 U.S.C. § 405(g); *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971); *Austin v. Shalala*, 994 F.2d 1170, 1174 (5th Cir. 1993). It is more than a scintilla but less than a preponderance. *Richardson*, 91 S.Ct. at 1427. The district court may not reweigh the evidence or substitute its judgment for that of the Commissioner, but must scrutinize

the entire record to ascertain whether substantial evidence supports the hearing decision. *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988).

A disabled worker is entitled to monthly social security benefits if certain conditions are met. 42 U.S.C. § 423(a). The Act defines "disability" as the inability to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or last for a continued period of 12 months. *Id.* § 423(d)(1)(A); *Cook v. Heckler*, 750 F.2d 391, 393 (5th Cir. 1985). The Commissioner has promulgated a five-step sequential evaluation process that must be followed in making a disability determination:

1. The hearing officer must first ascertain whether the claimant is engaged in substantial gainful activity. A claimant who is working is not disabled regardless of the medical findings.

2. The hearing officer must then determine whether the claimed impairment is "severe." A "severe impairment" must significantly limit the claimant's physical or mental ability to do basic work activities. This determination must be made solely on the basis of the medical evidence.

3. The hearing officer must then determine if the impairment meets or equals in severity certain impairments described in Appendix 1 of the regulations. This determination is made using only medical evidence.

4. If the claimant has a "severe impairment" covered by the regulations, the hearing officer must determine whether the claimant can perform his past work despite any limitations.

5. If the claimant does not have the residual functional capacity to perform past work, the hearing officer must decide whether the claimant can perform any other gainful and substantial work in the economy. This determination is made on the basis of the claimant's age, education, work experience, and residual functional capacity.

*See generally*, 20 C.F.R. § 404.1520(b)-(f). The claimant has the initial burden of establishing a disability in the first four steps of this analysis. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5, 107 S.Ct.

2287, 2294 n.5, 96 L.Ed.2d 119 (1987). The burden then shifts to the Commissioner to show that the claimant is capable of performing work in the national economy. *Id.* A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

In reviewing the propriety of a decision that a claimant is not disabled, the court's function is to ascertain whether the record as a whole contains substantial evidence to support the Commissioner's final decision. The court weighs four elements to determine whether there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) subjective evidence of pain and disability; and (4) the claimant's age, education, and work history. *Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995), *citing Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991). The ALJ has a duty to fully and fairly develop the facts relating to a claim for disability benefits. *Ripley*, 67 F.3d at 557. If the ALJ does not satisfy this duty, the resulting decision is not substantially justified. *Id.* However, procedural perfection is not required. The court will reverse an administrative ruling only if the claimant shows that his substantive rights were prejudiced. *Smith v. Chater*, 962 F.Supp. 980, 984 (N.D. Tex. 1997).

B.

Plaintiff first contends that the ALJ did not properly evaluate his testimony in determining that his subjective complaints of pain and the limiting effects of his symptoms were not credible. At the administrative hearing, plaintiff testified that joint pain, arthritis, respiratory problems, and other limitations associated with sarcoidosis preclude him from working. (*See* Tr. at 464, 466-67, 475). Plaintiff stated that, because of his impairments, he cannot walk more than one block, sit more than five minutes, stand more than 10 minutes, or frequently lift more than 10 pounds. (*Id.* at 470-71, 473). According to plaintiff, he typically has four or five "bad days" a week where he doesn't

feel well enough to do anything other than watch TV. (*Id.* at 467, 475-76). Although plaintiff admitted that he cleans, cooks, and mows the yard when able, he said those activities cause pain. (*See id.* at 465-66, 473-77). Plaintiff further stated that medication does not completely alleviate his pain-- it just makes the pain "halfway bearable." (*Id.* at 477). The ALJ rejected plaintiff's testimony regarding the intensity, persistence, and limiting effects of his symptoms as "not entirely credible." (*Id.* at 102).

The social security regulations establish a two-step process for evaluating subjective complaints of pain and other symptoms. First, the ALJ must consider whether there is an underlying medically determinable physical or mental impairment that could reasonably be expected to produce the pain or other symptoms alleged. *See* SSR 96-7p, 1996 WL 374186 at *2 (Jul. 2, 1996). Where such an impairment has been proved, the ALJ must evaluate the intensity, persistence, and limiting effects of the symptoms to determine whether they limit the ability to do basic work activities. *Id.*; *see also* 20 C.F.R. § 404.1529. In addition to objective medical evidence, the ALJ should consider the following factors in assessing the claimant's credibility:

1. The individual's daily activities;

2. The location, duration, frequency, and intensity of the individual's pain or other symptoms;

3. Factors that precipitate and aggravate the symptoms;

4. The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;

5. Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;

6. Any measures other than treatment the individual uses or has used to relieve pain or other symptoms; and

> 7. Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

SSR 96-7p, 1996 WL 374186 at *3. Although the ALJ must give specific reasons for his credibility determination, "neither the regulation nor interpretive case law requires that an ALJ name, enumerate, and discuss each factor in outline or other rigid, mechanical form. It suffices when the administrative decision is sufficiently specific to make clear that the regulatory factors were considered." *Prince v. Barnhart*, 418 F.Supp.2d 863, 871 (E.D. Tex. 2005), *citing Shave v. Apfel*, 238 F.3d 592, 595 (5th Cir. 2001).

In her decision, the ALJ cited to the applicable regulations, summarized the evidence, and articulated legitimate reasons for finding that plaintiff's testimony was "not entirely credible." (*See* Tr. at 101-04). The judge observed that plaintiff engages in a variety of activities of daily living that suggest an ability to work, such as driving a car, cooking, cleaning, mowing, and grocery shopping. (*See id.* at 102; *see also id.* at 465-66, 477). The judge also noted that plaintiff's medical records fail to corroborate his complaints. (*Id.* at 102-03). Instead, those records show that plaintiff's sarcoidosis was in remission, (*see id.* at 374, 381, 425), that his pulmonary function was only moderately impaired, (*see id.* at 411, 416, 422), that he was able to ambulate with a cane, (*see id.* at 370, 423), and that he exhibited a full range of motion in his upper extremities, (*see id.* at 235, 412). Plaintiff told his doctors that he stopped taking medication and going to therapy, that he was able to tolerate his hip pain, and that he felt "good" with "no complaints." (*See id.* at 370, 374, 381, 410). In addition, the ALJ found that "[t]here is no indication that the claimant is on any strong medications or non-steroidal anti-inflammatory drugs[.]" (*Id.* at 104). Thus, a fair reading of the entire hearing decision shows that the ALJ used the proper legal standards in assessing plaintiff's credibility. *See, e.g. Salgado v. Astrue*, 271 Fed.Appx. 456, 2008 WL 828945 at *6 (5th Cir. Mar. 28, 2008)

(upholding credibility determination made by ALJ notwithstanding failure to address each regulatory factor); *Undheim v. Barnhart*, 214 Fed.Appx. 448, 2007 WL 178062 at *2 (5th Cir. Jan. 19, 2007) (same).

Plaintiff counters that the ALJ overstated his abilities to mow the lawn, which takes him an entire day and requires an additional day to recover from the effort, and prepare his own meals, which consist mostly of cold sandwiches. (*See* Tr. at 471-72, 477). However, the ALJ relied on a variety of factors in assessing plaintiff's credibility – not just those two activities of daily living. The additional testimony cited by plaintiff does not alter the conclusion that the ALJ's credibility determination is supported by substantial evidence.

C.

Next, plaintiff argues that the ALJ failed to give controlling weight to the opinion of his treating physician, Dr. Carolyn A. Smith, who stated that plaintiff was "disabled from working." (*See* Tr. at 238). The opinion of a treating source is generally entitled to controlling weight so long as it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(d)(2); *Spellman v. Shalala*, 1 F.3d 357, 364 (5th Cir. 1993). Even if a treating source opinion is not given controlling weight, it still is entitled to deference "and must be weighed using all of the factors provided in 20 C.F.R. 404.1527 and 416.972." SSR 96-2p, 1996 WL 374188 at *4 (Jul. 2, 1996). *See also Newton v. Apfel*, 209 F.3d 448, 456 (5th Cir. 2000). These factors require consideration of:

    (1)    the physician's length of treatment of the claimant;

    (2)    the physician's frequency of examination;

    (3)    the nature and extent of the treatment relationship;

>   (4) the support of the physician's opinion afforded by the medical evidence of record;
>
>   (5) the consistency of the opinion with the record as a whole; and
>
>   (6) the specialization of the treating physician.

20 C.F.R. § 404.1527(d)(2). A treating source opinion cannot be rejected absent good cause for reasons clearly articulated in the hearing decision. *Myers v. Apfel*, 238 F.3d 617, 621 (5th Cir. 2001). More specifically:

> [T]he notice of the determination or decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.

SSR 96-2p, 1996 WL 374188 at *4-5.

On April 13, 2005, plaintiff was examined by Dr. Smith, a rheumatologist at the Dallas VA Medical Center. (*See* Tr. at 238). In her progress notes from the appointment, Dr. Smith stated that plaintiff was "currently disabled from working" due to a mass under his right clavicle and sarcoid arthropathy. (*Id.*). The ALJ rejected this opinion, finding that plaintiff could perform sedentary work that did not involve exposure to chemicals, smoke, fumes, lung irritants, and extreme temperatures. (*See id.* at 100-01). In a thorough and well-reasoned decision, the judge explained why Dr. Smith's disability opinion was not entitled to controlling weight:

> Dr. Smith gives claimant a disabling residual functional capacity based upon osteoarthritis, and possible avascular necrosis of the hip. In April 2005, Dr. Smith noted that the claimant's sarcoid was active and that the claimant was 100% disabled. However, Salahuddin Kazi, M.D., a rheumatologist, noted in May of 2006 that claimant's avascular necrosis of the hip was in remission. The medical records reflect that the claimant's hip pain had improved to the point that it was tolerable and he was able to mow the lawn. With regards to

> claimant's pain in his right clavicle, Tara Armitage-Clark, NP noted in March of 2007 that the claimant exhibited full active range of motion, no crepitus or joint deformity associated with bilateral upper extremity movement. There is no indication that the claimant is on any strong medications or non-steriodal anti-inflammatory drugs and the claimant has no active rheumatology issues. The undersigned finds that Dr. Smith's opinion is based primarily on pain and is not consisted [sic] with the treatment records.

(*Id.* at 104). This explanation constitutes "good cause" for giving the treating source opinion limited or no credence. Although the ALJ did not make a specific finding as to each of the factors set forth in 20 C.F.R. § 1527(d)(2), she cited to the relevant regulations and social security rulings and indicated that each of the factors had been considered. (*Id.* at 103). The regulations require only that the Commissioner "apply" the section 1527(d)(2) factors and articulate good reasons for the weight assigned to the treating source opinion. 20 C.F.R. § 1527(d)(2). The ALJ need not recite each factor as a litany in every case. *See Johnson v. Astrue*, No. 3-08-CV-1488-BD, 2010 WL 26469 at *4 (N.D. Tex. Jan. 4, 2010). Moreover, Dr. Smith's statement that plaintiff is "disabled from working" is not a medical opinion and, thus, has no special significance. 20 C.F.R. § 404.1527(e)(1); *see also Frank v. Barnhart*, 326 F.3d 618, 620 (5th Cir. 2003) (determination that claimant is "unable to work" is a legal conclusion reserved to Commissioner). No error occurred in this regard.

### D.

Plaintiff further contends that the ALJ relied on faulty vocational expert testimony in determining that he has the residual functional capacity to perform other work. At the administrative hearing, Susan Brooks, a vocational expert, testified that a hypothetical person of plaintiff's age, education, work experience, and functional limitations could work as a charge account clerk, an escort vehicle driver, and an optical assembler. (*See* Tr. at 491). According to plaintiff, each of

these jobs, as described in the *Dictionary of Occupational Titles* ("DOT"),[1] requires abilities beyond his residual functional capacity. Specifically, plaintiff contends that the jobs of optical assembler and escort vehicle driver require fine fingering and handling abilities beyond the limitations recognized by the ALJ, and that the charge account clerk job requires a mental residual functional capacity which he is not capable of maintaining due to pain and the side effects of his medications. (*See* Plf. MSJ Br. at 4-6).

As factfinder, the ALJ has the sole responsibility for weighing the evidence and choosing whichever limitations are most supported by the record. *See Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991); *Musgrove v. Astrue*, No. 3-07-CV-0920-BD, 2009 WL 3816669 at *6 (N.D. Tex. Nov. 13, 2009). Here, there is no objective medical evidence that plaintiff's carpal tunnel syndrome limited his fingering or handling abilities in such a way that would preclude him from working as an optical assembler or an escort driver. Nor is there any objective medical evidence that plaintiff was limited in his ability to work due to pain or the side effects of medication. Although plaintiff testified that he has difficulty gripping and experiences problems with his hands, (*see* Tr. at 471, 473), the ALJ rejected that testimony. (*See id.* at 105). Moreover, the vocational expert noted that even if a hypothetical person of plaintiff's age, education, work experience, and functional limitations had an additional limitation of "frequent, not constant or repetitive handling/fingering," it would not affect the optical assembler and escort vehicle driver jobs. (*See id.* at 492). Because the hypothetical presented to the vocational expert reasonably incorporated all limitations found by the ALJ, her testimony provides substantial evidence supporting the denial of benefits. *See Bowling v. Shalala*, 36 F.3d 431 (5th Cir. 1994).

---

[1] The DOT was promulgated by the Department of Labor to provide "standardized occupational information to support job placement activities." *See Dictionary of Occupational Titles* at xv (4th ed. 1991). The DOT, along with a companion volume -- *The Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles* ("SCO") -- contain descriptions of the requirements for thousands of jobs in the national economy.

E.

Finally, plaintiff claims that the Commissioner failed to establish that other jobs exist in significant numbers. At the administrative hearing, the vocational expert testified that there were 1,100 charge account clerk jobs, 1,200 escort vehicle driver jobs, and 4,000 optical assembler jobs in the state of Texas. (*See* Tr. at 491). Plaintiff maintains that this is not a sufficient number of jobs to support a finding of "not disabled" at the fifth step of the sequential evaluation process.

When a claimant does not have the residual functional capacity to perform his past relevant work, he may be found not disabled only if the Commissioner proves that the claimant can perform other gainful and substantial work in the economy. *Yuckert*, 107 S.Ct. at 2294 n.5; *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994), *cert. denied*, 115 S.Ct. 1984 (1995). Work exists in the economy when it exists in significant numbers either in the region where the claimant lives or in several other regions of the country. 20 C.F.R. § 416.966(a). The term "significant numbers" is defined loosely and only by negative implication: "Isolated jobs that exist only in very limited numbers in relatively few locations outside the region where you live are not considered 'work which exists in the national economy.'" *Id.* § 416.966(b). There is no bright-line rule regarding what constitutes a significant number of jobs. Rather, each case must be evaluated on its individual merits. *See, e.g. Trimiar v. Sullivan*, 966 F.2d 1326, 1330 (10th Cir. 1992); *Hall v. Bowen*, 837 F.2d 272, 275 (6th Cir. 1988). The ultimate question on judicial review is whether the ALJ's resolution of this fact issue is supported by substantial evidence. *Hollan v. Apfel*, No. 3-00-CV-0002-H, 2001 WL 180151 at *8 (N.D. Tex. Feb. 20, 2001).

Here, plaintiff argues that 1,100 charge account clerk jobs, 1,200 escort vehicle driver jobs, and 4,000 optical assembler jobs -- which total 6,300 jobs in Texas -- do not represent a significant number of jobs when considered as a percentage of the workforce. (*See* Plf. MSJ Br. at 8). This

argument misses the mark. Whether the number of alternative jobs is significant cannot be answered in terms of percentages of the overall job market. *See Hall*, 837 F.2d at 275 ("[W]hen there is testimony that a significant number of jobs exists for which the claimant is qualified, it is immaterial that this number is a small percentage of the total number of jobs in a given area."). Instead, the court should consider a variety of factors, including: (1) the level of the claimant's disability; (2) the reliability of the vocational expert's testimony; (3) the reliability of the claimant's testimony; (4) the distance the claimant is capable of traveling for work; (5) the types and availability of such work; and (6) the isolated nature of the jobs. *Id.* "The decision should ultimately be left to the trial judge's common sense in weighing statutory language as applied to a particular claimant's factual situation." *Id.*

Judged against this standard, substantial evidence supports the finding that there are a significant number of alternative jobs plaintiff could perform. The regulations allow the Commissioner to meet his burden by showing that work exists in significant numbers either in the region where the claimant lives or in several other regions of the country. 20 C.F.R. § 416.966(a). In addition to the jobs in Texas, the vocational expert testified that there were 15,000 charge account clerk jobs, 15,000 escort vehicle driver jobs, and 75,000 optical assembler jobs existing in the national economy. (Tr. at 491). There is no indication that the vocational expert did not understand the term "national economy" in the specific, regional way contemplated by the social security regulations. The ALJ properly relied on this testimony in finding that plaintiff was not disabled. *See Hames v. Barnhart*, No. 7-03-CV-163-BD, op. at 9-10 (N.D. Tex. Jun. 29, 2004); *Fountain v. Barnhart*, No. 3-03-CV-0394-R, op. at 6 (N.D. Tex. Jun. 29, 2004).

## **RECOMMENDATION**

The hearing decision should be affirmed in all respects.

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: June 17, 2010.

JEFF KAPLAN
UNITED STATES MAGISTRATE JUDGE